Dhanielle Rose DeClay
Po box 2034
WHITERIVER, Arizona 85941
928-594-0631

FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 1 1 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dhanielle Rose DeClay,<br><br>                    Plaintiff,<br><br>v.<br><br>Morey Cole<br>Tim Webster<br>Bureau of Indian Affairs<br><br><br><br>                    Defendant. | CASE NUMBER:<br><br><br>CV-17-08002-PCT-JJT<br><br><br>**COMPLAINT** |

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _LRCivPS.4_
                    (Rule Number/Section)

### Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1331. This employment discrimination lawsuit is based on:

Sexual Orientation Discrimination and Sexual Gender discrimination

The plaintiff is a resident of WHITERIVER, USA County, Arizona and a citizen of the United States.  The defendant, Morey Cole, is a resident of WHITERIVER, Arizona and a citizen of the United States.  The defendant, Tim Webster, is a resident of WHITERIVER, Arizona and a

2

citizen of the United States.  The defendant, White Mountain Apache Tribe, is a resident of WHITERIVER, Arizona and a citizen of the United States.   The cause of action arose in the Phoenix division.

**Employment Discrimination Complaint**

The conduct complained of in this lawsuit involved the following:

Termination of my employment.  Failure to promote me.  Terms and conditions of employment differ from those of similar employees.  Retaliation.  Harassment.  Other: sexual orientation discrimination and sexual gender discrimination

The conduct(s) above is referred to in the charge of discrimination.  I believe I was discriminated against because of my:

Gender.  Other conduct: sexual orientation

The reason(s) above is referred to in the charge of discrimination.

To:     Whom It May Concern,

Date:   11-08-16

From:   Dhanielle DeClay

P.O. Box 2034

Whiteriver, AZ 85941

(928) 594-0631

d.declay@gmail.com

2

Hello, attached are three witness statements including one written by my mother, Jackie Altaha, which I identified as ITEM A. JACKIE ALTAHA wrote the following statement which I have typed word for word here and have included as an attachment identified as ITEM A:

To: Whom it may concern

I am writing this letter on behalf of Dhanielle DeClay

On July 25, 2016 at 6:00 pm.

I, Jackie Altaha along with another person, were standing outside the Memorial Hall, for a Banquet and I seen a Police Unit drive by. It was Morey Cole. He was staring at the red truck parked belonging to my daughter Dhanielle DeClay. As it was bothering him as to why and how it's park there at the Memorial Hall, he kept looking and then he parked. As he was driving the Police Unit he should be out patrolling, not following my daughter's every move.

He has a job, he should be doing his job and not busy spying and collecting information about another fellow officer.

My mother wrote how Morey Cole had followed me when I was not working, off duty and she described how he parked near my personal owned vehicle, a red Chevrolet, and monitored it. This incident meets the White Mountain Apache Tribe's **Criminal** Code for Harassment section 2.88 which states:

**Section 2.88 Harassment** A. A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:

3. Surveys or causes another person to survey a person for no legitimate reason.

3

ITEM B is a written statement from Roberta Henry, former WMAT Police Dispatcher, who wrote the following statement which I have typed word for word here and have included as an attachment identified as ITEM B:

Monday, November 7, 2016

To WHOM IT MAY CONCERN:

I remember when I worked in Dispatch Morey Cole would come into Dispatch Office and tell us Dispatchers to document officers of where they are at all times and have reported back to him. I simply would called to do welfare check by radio. I remember the other Dispatchers would talk about the Officers in a bad way. And were too quick to report to Morey Cole. I thought that was not appealing and should tell the truth on their work ethics. I have been able to work closely with Dhanielle Declay and Lutie LIttleman and both are great workers, they never came back to us with no contact on the job. They made sure they did great service to the public, requesting for officers. One was advised to do checks on them was the later part of May of 2012 can't remember but both times Morey Cole had told the Dispatch verbally to log everything down on these two officers Declay & Littleman. I thought it was very wrong to do that, since they were always calling in to go on duty and when they are going off duty. Morey Cole, Lt. Kane and others do not ask to hear your side but they listen to the Dispatchers more that are complaining. Discrimination plays a big role in Whiteriver Police Dept. and that is one reasons why we lost our jobs because of the Dispatchers lied about their whereabouts and Morey Cole and other uses them to their Authority. This needs to be stopped and maybe

4

give the jobs back to them. During the beginning of the year, Dispatchers Walkers,

Priscilla Cheney, Monica Cromwell, Gwen Lee and others laughter about

If you need more information call me at (928) 594-8672

Thank you

Roberta Henry

Dhanielle Declay due to her getting married to another lady and Morey Cole stood at

entrance of Dispatch and just laughed and not the stopped the convo and they all laughed.

Roberta verbally told me that Morey Cole requested to be notified personally if anything about

myself or Lutie came up; not the dispatcher supervisor, but him personally and Roberta

expressed how she felt this was wrong for she had been trained to report problems to her chain of

command, the Dispatch Supervisor, but Morey Cole directed her and the Dispatchers to do

otherwise when it involved myself or Lutie.

Roberta wrote how at approximately the beginning of 2016 she was in the dispatch room when

Dispatcher Supervisor Assistant Priscilla Cheney, Dispatcher M. Walters, Dispatch Supervisor

Monica Cromwell, Dispatcher Gwen Lee were verbally mocking the marriage of myself,

Dhanielle DeClay and my wife Michelle Armstrong. Roberta wrote how Morey Cole stood by

the doorway to dispatch and did not do anything to stop this verbal discrimination of my sexual

orientation, instead Captain Morey Cole stood idly by and listened to this conversation and he

engaged in this cruel entertainment by laughing at my gay marriage along with this group.

Roberta verbally told me how the females of this group expressed to Morey Cole how they

believed gay marriage was wrong.

Officer Kathy Kasey had been literally mocked by several officers who had written inappropriate comments on a white board in the police squad room and due to her having political backing, through her brother, Jerome Kassey, she was terminated but the reinstated by the council. Morey Cole, due to political intimidation, was quick to come to Officer K. Kassey's personal defense by putting out a memorandum to All WMAT Police Department Employees which I have included as an attachment ITEM C:

There was inappropriate and unprofessional comments posted on the board in the modular's squad room. Our department does not condone such unprofessionalism. The matters involving our personnel are being dealt with in a professional manner and we expect our employees to refrain from posting personal opinions on those matters.

All personal opinions are not to be posted on any departmental property. Furthermore, if you have such opinions, get with your supervisor so that such issues can be addressed appropriately. We all need to continue to focus on our duties in law enforcement in a professional manner. Any future conduct involving the posting of personal opinions of departmental issues, will result in disciplinary action(s) taken upon you.

Patrol supervisors need to monitor what is being posted on departmental bulletins and dry-erase boards.

If you have any questions regarding this issue, contact your immediate supervisor.

I believe Morey Cole intentionally discriminates against me because I am gay, for if he truly respected me, he would have maintained his military bearing and not been laughing at my gay marriage, he would have taken discipline against those laughing at my gay marriage and he

6

would have tried to protect me, as he did with Officer K. Kassey by reminding the entire WMA Police Department to refrain from verbally making inappropriate and unprofessional comments. By laughing at my gay marriage, Morey Cole, was unprofessional and he violated the WMA Police Department's

STANDARD OF CONDUCT (ITEM C 1)

4. BEARING: Officers shall maintain military bearing while on duty

6. CONDUCT TOWARD FELLOW EMPLOYEES: Employees shall treat each other with respect and courtesy or otherwise conduct themselves in a professional manner at all times.

8. IMPARTIAL ATTITUDE: All employees shall remain completely impartial towards all persons coming to the attention of the department.

---

Item D is a written statement from Lutie Littleman, former WMAT Police Sergeant, my former supervisor in which she wrote the following statement which I have typed word for word here and have included as an attachment identified as ITEM D:

To Whom It May Concern,                    11 07 16

My name is Lutie LIttleman, I use to work for the Whiteriver Mountain Apache Tribal Police until July 2016. During my employment with the police department I did not receive any training on how to clean the departmental issued gun shots. I did receive training on cleaning our AR 15 rifle however that was at least over ten years ago; I chose not to carry either weapon since I felt proper training wasn't provided.

7

Furthermore, Officer Dhanielle Declay was under my supervision for several months within the past year and she had submitted approximately hour training requests to which I did approve and sent to the chain of command and from my understanding they were denied without explanation. I am aware of other officers being sent to training some of whom attended more than once.

If you have any questions I may be contacted at (928) 594-0093 or llittleman@hotmail.com

Thank you

Lutie Littleman

Lutie Littleman verbally stated that she too has not received training on how to clean her departmental issued shot gun & departmental issued taser; she recalled how approximately 10 years ago she had received training on cleaning on her assault rifle.

Lutie wrote how I had turned in approximately four training requests this past year to her and how they were each denied without explanation and how she was aware of other officers attending multiple trainings, including Sergeant J. Steah; who was able to attend training even during the WMAT's Ceder Creek Fire while other officers, such as Lutie Littleman, were denied having any days off.

Lutie was aware that my wife, Michelle Armstrong's, ride along request was **denied** by the Chief due to the Ceder Creek Fire,

yet Sergeant J. Steah's ride along, with his wife, was **approved** and she was allowed to ride along with him during the Ceder Creek Fire.

Lutie turned in a ride along request during the Ceder Creek fire and she stated her ride along request was **denied** because of the Ceder Creek fire.

Lutie Littleman verbally reported that she had reprimanded me for an incident and Morey Cole instructed her to send out a memo, that included Dhanielle DeClay's written reprimand, to the entire WMA Police Department; Lutie chose to disobey this order and instead she only sent out my letter of reprimand to the WMA Police Sergeants because she did not want to violate my confidentiality rights.

Lutie Littleman is an openly gay officer that was also terminated within the same time frame as myself.

---

I have attached and included the WMAT Police Department's Firearm policy for review; which begins on page 45 and continues to page 48. I have included the WMAT Police Department's firearm police as ITEM E1, ITEM E2, ITEM E3 & ITEM E4 and as you review, the firearm training policy does not require the WMAT Police Department provide its officers with training on how to break down and clean their departmental issued shot guns, departmental issued AR 15 rifles, nor their departmental issued tasers.  I was terminated for not cleaning my weapon before I turned it in.

ITEM E 5 The Firearms policy states, in regards to issued firearms, "NO OFFICER, EXCEPT THE LAW ENFORCEMENT DEPARTMENT ARMORER SHALL....CLEAN IT."

Morey Cole wrote in his termination letter addressed to me that my weapons were within my vehicle, which is the same as to say my AR 15 & shot gun were secured in my vehicle. Morey Cole wrote that he located my shot gun and AR 15 behind my driver seat, which was in

9

compliance with the firearms policy ITEM E 6 which states, "FIREARMS SHALL NOT BE LEFT UNATTENDED IN PUBLIC VIEW." Behind my driver's seat, my shot gun and my AR 15 were out of public view. Morey describes how my shot gun and AR 15 were not secured in the gun locks, which are located between the front driver and passenger seat; however neither the shot gun nor the AR 15 were able to be seated in the gun lock, I had attempted to place them in the gun lock but they did not fit and the gun lock did not include any tools to adjust it.

On Morey Cole's termination letter page 3 of 8, paragraph 3, Morey Cole describes how my Glock 35 handgun was filthy, dirty and the side was covered in grime; however this is **hearsay**, where is his photograph of the condition of my weapon when he inspected it. I was often at the IHS, ER, waiting room and several nurses and doctors took notice to how I often used the medicated toilets to clean all the equipment on my duty belt, including the exterior of my Glock 35 gun, on a regular basis, mostly every time I went to the hospital and had to wait for prisoners to be medically cleared; which was very often.

On Morey Cole's termination letter page 4 of 8, paragraph 1-6, Morey Cole describes the condition of my patrol unit, #25, how it was "unacceptable," however again this is **hearsay**, where is his photograph of the condition of my unit when he inspected it. Almost daily I washed my patrol unit and this can be confirmed by WMA Police janitor for we would share usage of the water available outside of the police squad room because I would use the water to wash the interior and exterior of my unit, while he would fill up a bucket of mop water. Also Lt. J. Anderson can also confirm I frequently washed my patrol unit for I would often temporarily park in his designated parking space to wash my unit, which was nearest to the water hose.

ITEM N:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129 on Wednesday, October 15, 2014 at 11:56AM in which it describes an incident that occurred on October 06, 2016 when Evidence Technician Rueben Kessay became violent and intimidating with me for no reason by pounding his fist on a desk near where I was standing and yelled at me, "DO IT THE WAY I TELL YOU TO!!! NO QUESTIONS!!!" I documented this hostile work environment, expressed how I did not feel safe, and yet I am not aware of any disciplinary action that was taken against Mr. Kessay nor was anything ever done to protect my safety.

ITEM O:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129 on Wednesday, January 28, 2015 at 7:05 AM in which it describes an incident that occurred on 1/27/15 at approximately 2130 hours, when an unknown officer, committed harassment for he/she surveyed me, for no legitimate reason, in a police unit by following me home, parked in my driveway and then departed. I documented this crime and yet I am not aware of any disciplinary action that was taken against this police officer nor was anything ever done to ensure it did not happen again.

This incident meets the WMAT **Criminal** Code for Harassment section 2.88 which states:

> **Section 2.88 Harassment** A. A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:
>
> 3. Surveys or causes another person to survey a person for no legitimate reason.

11

ITEM P:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129 on February 24, 2015 at 11:56AM, in which it describes an incident that occurred on 02/21/15 at approximately 1110 hours, when WMAT Police Dispatcher Marvalynn Walters created a hostile work environment by giving me attitude, for no legitimate reason, and making rude comments to me such as: "IS THAT IN YOUR JOB DESCRIPTION?!" & "AREN'T YOU SUPPOSED TO BE OFF?!" I documented this hostile work environment, I requested it be stopped, and yet I am not aware of any disciplinary action that was taken against Dispatcher M. Walters nor was anything ever done to stop nor prevent a hostile work environment.

ITEM Q:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129 & former Dispatch Supervisor Monica Cromwell, on Monday April 13, 2015 at 11:27 AM, in which it describes an incident that occurred on 4/13/15 at approximately 0711 hours, when WMAT Police Dispatcher Marvalynn Walters was giving me attitude, for no legitimate reason, and refused to dispatch pertinent information about a serious call, an assault, that the caller had provided to her; although I asked for this information via radio repeatedly. I documented this hostile work environment, I requested she be monitored, and yet I am not aware of any disciplinary action that was taken against Dispatcher M. Walters nor was anything ever done to stop nor prevent a hostile work environment.

12

Review Page 2, of this documentation, and you'll find that Roberta Henry witnessed this same WMA Police dispatcher M. Walters mocking and laughing about my gay marriage at the beginning of 2016.

---

ITEM R:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Monday April 20, 2015 at 1:29 PM, in which it describes an incident that occurred on 4/19/15 at approximately 1345 hours, in which I was on a call, running, when I lost my departmental issued baton. I briefed Captain M. Cole about this incident and he verbally stated I needed to pay for a replacement baton, out of my own pocket; which I did. After I was terminated, I turned this baton in and I never received reimbursement for that baton I purchased. Captain M. Cole said the WMAT Police Department might reimburse me; however, as of to date, they have not. I feel that Captain Morey Cole discriminates against me, for I am not aware of other WMA police officers who have been required to pay, out of their own pocket, for departmental issued equipment. Also I have seen the supply room and I am aware that there are used batons in there that Captain Cole could have allowed me to be issued, instead he turned me away without providing me with a baton/equipment that is required to be carried by every WMAT Police Officer. Based on my experience with another police department, when I had lost departmental issued equipment that I lost during foot pursuits or had police equipment that was damaged during the service of my calls, I turned in memorandums and that equipment was replaced and I have never been made to pay out of my own pocket.

---

13

ITEM S:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Monday June 1, 2015 at 2:22 PM, in which it describes an incident that occurred on 6/1/16 when former Officer Daryl Cleveland had yelled at me in public, at the N'dee bi fitness center, in the police squad room and in Lt. J. Anderson's office. Approximately 5-10 times, with Lt. J. Anderson as a witness, Officer D. Cleveland pointed his index finger in my face, approximately 1-6 inches from my face and eyes. This incident was an extreme case of a hostile work environment and Officer D. Cleveland met the elements for three criminal charges: assault, threatening & intimidating and disorderly conduct. I documented this extremely hostile work environment, yet I am not aware of any disciplinary action that was ever taken against Officer D. Cleveland for this incident; nor were any criminal charges ever filed. Nothing was ever done by the WMAT Police Department to secure my personal safety and stop nor prevent this type of extremely hostile work environment.

Prior to this incident, Officer D. Cleveland had been the suspect of two domestic Violence cases that I had written, one in which he physically violently slapped his son, when Officer D. Cleveland was intoxicated, and his son reported it to his teacher, who is employed with the Whiteriver Elementary School, that teacher reported it to the police; which I forward to prosecution but no action was taken against Officer D. Cleveland.

And I also wrote a second domestic violence report, involving Officer D. Cleveland slamming his vehicle door on his girlfriend Dara's arm; Dara who works for WMAT prosecution.

14

Sometimes standing up and doing the right thing, documenting the truth, is not easy for the repercussion is clearly seen here, an extremely hostile work environment that jeopardized my own safety.

---

ITEM T:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Tuesday, August 2015 at 12:05 PM, and this same email was sent to Sgt. L. Littleman on Wednesday, September 30, 2015 at 6:33 AM in which I informed them of my change in marital status and informed them of my wife's name.

However, that memorandum did not suffice for after Tim Webster, who is a Mormon, became Chief of Police, Lt. J. Anderson requested I provide my actual marriage certificated to Sgt P. Steel, which I personally delivered it to Sergeant P. Steel as she was seated in her office at the WMA Police Department. I believe this is a form of sexual orientation discrimination for I spoke with a married police officer, Officer R. Divalentino #170, and I asked him during his employment with the WMA Police Department if he was ever required to provide his marriage certificate and he told me he was NOT required to provide his marriage certificate.

---

ITEM U:

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Saturday, October 31, 2015 at 3:20 PM, in which I turned in a memorandum stating my interest to become a WMAT Police Sergeant for I had been selected as Acting Sergeant for the WMAT Police

Department for approximately one year and six months; during that time, I had also sporadically been acting Lieutenant with Lt. J. Anderson had been absent.

Officer R. Divalentino #170 had also been selected as an Acting Sergeant for approximately two years.

Regardless of Officer R. Divalentino and my extensive experience as Acting Sergeants, Jonathan Steah was selected as Sergeant instead,

Officer J. Stead was selected as Sergeant even though: he is a rookie officer of approximately three years or less of service, even though he endeavored to have a martial affair with former WMAT Police Officer Melissa Ward #191; he went as far as to donate a large amount of his annual leave to only her yet no other sick officer, even though he committed extreme negligence by driving past a community member near the roadway and his failure to act caused the death of that community member and he was selected to be Sergeant even though he commits the felonious crime of video piracy by illegally copying and distributing videos/movies for himself and WMA Police Officers.

I was selected to be Acting Sergeant due to my outstanding work ethic, Lt. J. Anderson even went as far as to write me a letter of reference when I applied to be the WMA Police Department's Chief of Police, which I have included here and have type word for word as ITEM V :

> May 28, 2015

> To Whom It may Concern:

16

It is my pleasure to recommend Dhanielle DeClay for employment with your organization. I have known Dhanielle for a period of time during which she worked as a police officer and acting sergeant with the White Mountain Apache Police Department. I have consistently impressed with Dhanielle's attitude and productivity during the time when she worked as police officer and currently acting sergeant.

Dhanielle is very motivated and dependable. Dhanielle is a quick learner and has shown the ability to digest large volume of information and ideas.

I recommend Dhanielle Declay without reservations. I am confident that Dhanielle will establish productive relationship with your employees/staff.

Officer R. Divalentino #170 also wrote me a letter of recommendation that I have typed word for word and have included as an attachment that I have identified as ITEM W:

June 3, 2015

To Whom It May Concern:

This letter of recommendation is in support of Dhanielle DeClay's application for employment for the Chief of Police position. I have known Dhanielle for about four years as a colleague working for the White Mountain Apache Police Department. While working with her, I have always been impressed with Dhanielle's intelligence, diligence, and professionalism. I have seen her advance from Patrol Officer to Acting Sergeant.

Dhanielle has an outstanding rapport with other officers and I find that she is a pleasure to work with. Over the years she has provided leadership and direction to the Police

17

Department, and has an excellent working relationship with the Bureau of Indian Affairs and other agencies.

I can attest to many qualities that would make Dhanielle an excellent choice. I have confidence that her combination of education, experience, intelligence, and perseverance would render her able to learn the extra requirements needed for the Chief of Police position.

With regard to personal character, Dhanielle has demonstrated an ability to handle stressful situations. Dhanielle's ability to handle stress testifies to her character, her upbringing, and her desire to succeed.

I have confidence that Dhanielle will prove herself if selected as the new Chief of Police.

ITEM X is an Employee Appraisal completed on me by Lt. J. Anderson on 9/8/14 in which it reflects my overall performance rating as VERY GOOD and the following was written by Lt. J. Anderson, which I have typed word for word: "Acting Sergeant Dhanielle DeClay demonstrates great work ethics. Understands chain of command and obeys orders. Acting Sergeant Declay has potential to be a great leader."

I strongly believe I earned the position of Sergeant and Morey Cole chose not to select me as Sergeant because of his personal biases against me, including his disliking of my sexual orientation, for as you review the above letter of recommendations and my employee appraisal, I am definitely qualified and worthy of leadership positions regardless of my sexual orientation or my gender.

ITEM Y

18

I have included a memorandum, ITEM Y (1), written by Lieutenant Joshua Ben Anderson in which, as of 6/24/14 I was officially delegated as Acting Sergeant.

I have included a NOTICE OF PERSONNEL ACTION, ITEM Y (2),  in which as of 6/22/14 former Chief Travis J. Tessay signed off on my change of pay from $19.00 an hour to $23.00 an hour.

My pay was NOT changed so on January 23, 2015 Lieutenant Joshua Ben Anderson wrote a memo, ITEM Y (3), to Alonzo Declay to change my pay from $19.00 an hour to $23.00 an hour.

MY Pay was FINALLY changed $19.00 an hour to $23.00 an hour between the pay periods of 1/25/15-2/07/15; change of pay can be seen on my 2 check subs ITEM Y (4). I was Acting Sergeant until Morey removed that title from me as of 10/27/15, see attached change of pay from $23.00 an hour back to $19.00 ITEM Y(5).

The WMA Police Department committed theft of services, for as of to date, they failed to pay me as Acting Sergeant for approximately 217 days.

---

ITEM Z

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Friday, February 19, 2016 at 11:10 AM, in which I described an incident where my taser and 2 cartridges were damaged; shortly after Morey Cole issued me a replacement taser; however Lt. J. Anderson was not able to provide me 2 replacement cartridges at this time and therefore I continued to carry a taser cartridge that had the leads exposed and that was missing the cover doors for these leads; please refer to Captain M. Cole's termination letter 3 of 8, the fourth paragraph. If the WMA

19

Police Department would have acted on my request back on 2/19/16 & replaced my two replacement taser cartridges, as I had requested in my memo, I would not have had the defective ones that were turned in when I was terminated.

---

Prior to Tim Webster becoming Chief of Police, I approached Patricia DeClay and I asked her if I could be issued road cones for my patrol unit, due to my collapsible cones being damaged, run over, and no longer operable, to which Patricia informed that Morey Cole stated I would have to pay for replacement cones out of my own pocket, which I did.

ITEM #1(a) & ITEM #1 (b)

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Friday, February 19, 2016 at 11:12 AM, and this same email I later emailed to supply person Misty Nachu on Wednesday, March 30, 2016 at 1:26 PM in which I described my police badge as being defective.

I approached Patricia Declay for a replacement badge and she told me More Cole said I would need to purchase another badge out of my own pocket.

On a later date, approximately 3/30/16, after Tim Webster had been hired as WMA Police Chief, I again asked if my police badge could be replaced to which, my police badge was finally replaced.

---

ITEM #2(A) & ITEM #2 (B)

20

Attached is a memorandum I emailed to Lieutenant Joshua Anderson #129, on Monday, June 06, 2016 at 11:50 AM, because Lt. J. Anderson verbally reported to me that Morey Cole alleged that I intentionally drove on a flat tire and Lt. J. Anderson requested I write a memo about what happened, to which I did. I wrote how I had been responding to a call, traveling from Whiteriver to Cibecue, but how my unit started drifting so I stopped and checked my tire in Ceder Creek and discovered my tire was flat; which I pulled into the Ceder Creek store parking lot and changed it.

Morey's allegation against me was completely false in this matter and his attacks to my personal character, such as this one, were constant when I worked under his supervision.

---

ITEM #3

Attached is a memorandum written by Chief Tim Webster addressed to Barry Yoyhoema from the BIA. This memo sheds light on the source of all the complaint on hand, initiated by Tim Webster.

My placing a juvenile in time out **did not generate a complaint from the juvenile involved, nor the school staff, nor that juvenile's guardian**. As far as I am concerned the juvenile involved, the school staff and the juvenile's guardian currently have NOT filed any complaints against me for on the actions I took.

---

ITEM #4

Tim Webster and Morey Cole terminated me on 8/22/16; and attached is a photograph displaying the phone call I made to BIA investigator Agent Keel who stated as of 8/22/16 he was NOT even

complete with his two investigations involving me; which means Tim Webster and Morey Cole **terminated prematurely**, before BOTH of my TWO investigation were even complete.

---

ITEM #5

As of June 20, 2016 I was placed on administrative leave WITH NO PAY, and Captain Morey Cole requested I contact his personal cell phone twice a day, 0800 & 1700 hours, & make him aware if I was going out of town; which I felt like my personal freedoms were infringed upon and restricted. However, I did comply with Captain Morey Cole's request, even though I felt he did not take my efforts seriously for attached is ITEM 5, which is a photograph of my cell phone texts I received from Captain Morey Cole including him informing me: "I'm at the movie theater, " "I'm in class, " and "i'm in a meeting."

---

ITEM #6

9/6/16 at approximately 1600 hours, I arrived at the WMA Police lobby and I attempted to turn in my grievance papers but the dispatcher on duty refused to accept my papers even though I tried to hand it to her through the opening of the bottom of the window. I took my papers, departed from the lobby and I texted Lt. J. Anderson and attached on ITEM #6, he stated he was off this day. I had to contact Chief T. Webster's personal cell phone, to which he exited the building and I handed my grievance papers to him to which he took; I explained to him I would return in a couple of days and submit papers that serves as Step 2 of the grievance process, to which he insisted I need not, however I insisted I had to in order to comply with the proper steps of the grievance process. When I did return on a later date, in the lobby, Tim Webster and

22

Alonzo Declay refused to accept my grievance papers. I believe the chief is homophobic for he physically avoided me as if I was sick or contagious on this day and he and Alonzo did not even want to touch my papers even though I was only attempting to comply with the second step of the grievance process.  I recorded this incident with my cell phone and it is available for review.

_____

I can't remember which year, but possibly in September 2015 or September 2014, the WMA Police Department had a parade float, during the annual WMAT Fair, with all the photographs of the police officers within the WMA Police Department but my photograph was not included. I felt extremely offended by this for I had diligently served my community but WMA Police staff intentionally chose not to display my photograph.

_____

I have been employed & committed to the WMA Police Department for approximately three years; however, the departed failed to hang my photograph on the wall of the police department where they hang pictures of all their officers. I felt extremely offended by this for I had diligently served my community but again WMA Police staff intentionally chose not to display my photograph.

_____

There was a time during my employment when Morey Cole was Acting Chief when he believed I did not want to serve the community of Cibecue, so he placed me in Cibecue for approximately 1-2 months; he did not do this with the other police officers. This type of treatment was not fair.

_____

23

Misty Nachu, a former evidence clerk of the WMA police department, verbally informed me that my Wife's ride along violations that I was terminated for are similar to what the Chief of Police Tim Webster & Captain Morey Cole are also doing. Misty verbally informed me that Chief of Police Tim Webster carpools with his wife in his assigned patrol unit. Misty informed me that her daughter is friend's with Morey's daughter and her daughter has seen Morey Cole driving his patrol unit when he drops his daughter off, off the reservation, at the Blue Ridge School.

If the Chief of Police Tim Webster and Captain Morey Cole are not required to follow the ride along provisions, why are they holding me to those rules when they cannot even hold themselves to the same rules? At least I turned in a signed ride along form, in reference to Morey Cole's termination letter of violation 1 & 9. And at least I did not go off the reservation in my patrol unit with my wife.

---

Before Morey Cole arrived at WMA Police Department and was designated Captain by the last chief, the WMA Police Department had dealt with me as an officer in a more positive way, they sent me to various trainings, promoted me and treated me fairly.

I seldom had direct contact with Morey Cole during my entire employment with the WMA Police Department, for him to establish a personal vendetta with me. Honestly I don't understand why he has treated me unfairly or why he failed to stop, failed to prevent & failed to discipline employees under his supervision when they verbally discriminating against me only because of my sexual orientation, because I married another female. Morey Cole does not like me because I am gay and he actively discriminated against me for being gay by not promoting me to Sergeant, not sending me to training, not allowing me to receive departmental equipment, not protecting

24

my gay rights, and orchestrating my termination; going as far as to write my termination letter, and the attached documents are only a small amount of sexual orientation discrimination & gender discrimination I endured from Morey Cole & Tim Webster during my employment with the WMA Police Department. Morey Cole did not reserve his sexual orientation exclusively for me, he also applied this hatred against gays to another openly gay police sergeant, Lutie Littleman.

Tim Webster is a Mormon. I believe Tim Webster allowed his religious beliefs to play a major factor on his decision to terminate two openly gay police officers, Lutie Littleman and myself, Dhanielle DeClay.

Regardless of all the hatred for gays that the WMA Police Department has collectively, specifically by some of those employees mentioned here in this document, I am willing to endure such treatment & this type of hostile work environment in order to serve my people and my community. Gay or not, I am a state certified police officer, a United States Army veteran, who is capable of serving my people, my community. Being gay has never affected the great service I have provided to my community and the WMAT community members themselves can testify to this; also review my statistics, I was a very active police officer.

25

## Demand

I want the court to reinstate me as a WMAT Police Sergeant. If the court is not able to help reinstate me, then I would like to be paid 22 years of salary that I would have earned with the WMA Police Department; I would like to be compensated for the next 22 years that I was supposed to be employed there. My termination letter that was orchestrated by Morey Cole and Chief Tim Webster is injurious to my future employment endeavors; I would like it to be removed/purged from my files. Last year I made approximately $95,000.00; I would have continued making this amount yearly if I had not been terminated. . **I am also seeking the following amount in monetary compensation: $2,090,000.00** . The Plaintiff wants a trial by jury.

## Administrative Procedures

I have not filed a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency.

I have not received a Notice of Right to Sue Letter.

Dated: \12/\14\\16

Signature of Pro Se Plaintiff
Dhanielle Rose DeClay
Po box 2034
WHITERIVER, Arizona 85941
928-594-0631

26